**BERKEY PHOTO, INC., Plaintiff,**

v.

**EASTMAN KODAK COMPANY, Defendant.**

**No. 73 Civ. 424.**

United States District Court, S. D. New York.

June 1, 1977.

Parker, Chapin, Flattau & Klimpl, New York City, for plaintiff Berkey; Alvin M. Stein, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant Eastman Kodak; John Doar, New York City, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

Plaintiff, Berkey Photo, Inc., has charged defendant, Eastman Kodak Company, with violations of Sections 1 and 2 of the Sherman Act. By order of October 29, 1976, the court referred all remaining discovery matters in this case and its companion case, *GAF Corporation v. Eastman Kodak Company*, D.C.N.Y., 73 Civ. 1893 (MEF), to Magistrate Sol Schreiber "to determine * * * whenever possible, or, if necessary, to hear and report." The result has been, as expected, a course of crisp, efficient management of pretrial proceedings bringing us now close to the eve of trial. The single discovery problem requiring the court's attention since the reference to the Magistrate is the close question now presented. It arises from one aspect of the Magistrate's order that all expert witnesses be deposed, and that, in connection with these depositions, and pursuant to Rule 612 of the Federal Rules of Evidence, all material given to the expert during his preparation be produced to opposing counsel.

The dispute concerns the refusal of Kodak to produce four notebooks ("the Doar notebooks") all or parts of which were shown to Kodak's economic experts as "background" during their preparation for this case.[1] According to the affidavit of defendant's counsel, John Doar, Esq., the notebooks were prepared by him in the course of readying the case for trial; they consist of his synthesis of the facts and factual issues. The material in the notebooks is said to "represent [counsel's] legal analysis, mental impressions and * * * legal judgment as to what facts were needed to be understood, mastered, and possibly presented in the trial of the Berkey case."

At his deposition, one of defendant's experts, Prof. Merton J. Peck, testified that he had received the Doar notebooks at some point during the past winter, probably in January. To the question whether he had the notebooks in his possession when he prepared the outline of his "witness book"[2] for production to plaintiff, the witness replied: "I don't recall, because we did not use them. We may have read them before or after, but we didn't use them, and I don't recall." Another of the experts, in an affidavit offered on this motion, states that he read the Color Slide and Movie volume and that this "served to fill in details about the development of various Kodak movie and slide films, and movie camera products. By reading the volume I gained a further appreciation of the technological details about the development of specific Kodak products." Although he did not read the CP & P volume carefully, he "did gain some appreciation of the photofinishing industry from it.[3]

■ On the record at the deposition, and later before Magistrate Schreiber, Kodak's counsel claimed a work product privilege with respect to the Doar notebooks and argued that they were not properly within the Magistrate's production order. The Magistrate overruled the objection and ordered the notebooks produced to plaintiff's counsel; defendant now moves for reversal of the Magistrate's ruling.[4]

---

1. The notebooks are entitled "Color Prints 1942–1976" (2 vols.), "Amateur Reversal Color Films 1928–1955, Amateur Color Slides 1955–1975, Amateur Color Movies 1955–1975" and "CP & P." Prof. Merton J. Peck received all four volumes; Prof. M. A. Adelman received at least two (he is uncertain whether he saw the "Color Prints" volumes); and Prof. R. C. Levin received all but the "Color Prints" volumes.

2. Prof. Peck's 440-page "witness book" contains the factual support for his opinion gathered from material that had been furnished to him by Kodak.

3. Levin Affidavit, April 29, 1977, ¶¶ 7–8.

4. Plaintiff argues that, pursuant to 28 U.S.C. § 636(b), defendant must show that the Magistrate's ruling is clearly erroneous before this court may reverse it. This is true, of course, with respect to findings of fact. Here, however, we have essentially undisputed facts giving rise to a question of procedural law—or, to

### I.

The Magistrate ordered production of the Doar notebooks pursuant to Rule 612, Fed. R.Evid. That rule provides in pertinent part that

" * * * [I]f a witness uses a writing to refresh his memory for the purpose of testifying, * * *

"(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,

"an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

Defendant argues that Rule 612 is inapplicable to this case because "the four volumes at issue were not used for assisting [the experts] in preparing [their] substantive testimony regarding the economic matters within [their] expertise." [5] Therefore, the argument proceeds, the witnesses did not use the material to "refresh [their] memor[ies] for the purposes of testifying" within the meaning of Rule 612.

As defendant notes, Rule 612 is not intended "as a pretext for wholesale exploration of an opposing party's files * * *." It was designed to permit "access * * * to those writings which may fairly be said

in fact to have an impact upon the testimony of the witness." [6] More broadly stated, "the purpose of the rule is the same as that of the *Jencks* statute, 18 U.S.C. § 3500: to promote the search of credibility and memory."

The question, then, is whether the Doar notebooks can be said to have had sufficient "impact" on the experts' testimony to trigger the application of Rule 612.

At the hearing on this motion, when the court asked why the Doar notebooks were given to the experts, defense counsel stated: "Because I thought it might be useful for them to have a review of the factual organization that I have prepared in connection with the history of the product development of the Eastman Kodak Company * * *. [I]t is useful to the client to have the expert as fully familiar with the background and operation of the company as he can [be] * * *." [7] This confirms and reinforces impressions given by the expert who reported that the notebooks "served to fill in details" and to enhance his "appreciation" of the facts concerning which his expertise was to be presented.

█ It is evident that the Doar notebooks, at least to a strongly arguable degree, may be supposed to have had "an impact upon the testimony of the witness." To state a less reducible minimum, they

---

say the least, a possibly "mixed" question insofar as the balancing of factors has a residual feel of empirical judgment. Cf. *McLeod, For and on Behalf of N.L.R.B. v. Business Machine and Office Appliance Mechanics Conference Board, Local 459 I.U.E.R.M.W.*, 300 F.2d 237, 239 (2d Cir. 1962); *Acme Highway Products Corp. v. D. S. Brown Co.*, 473 F.2d 849, 854 (6th Cir.), cert. denied, 414 U.S. 824, 94 S.Ct. 125, 38 L.Ed.2d 57 (1973); *DeCosta v. Columbia Broadcasting System, Inc.*, 520 F.2d 499, 508 (1st Cir. 1975), cert. denied, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976).

Another matter that should be noted, but may be resolved in passing, is plaintiff's charge that the documents which Prof. Peck used in preparing for the case, and on which he may have made certain notations, were destroyed by defense counsel when Prof. Peck returned them. While conceding that the material was destroyed, defense counsel asserts that it consisted of duplicates of material already produced to plaintiff, and that Prof. Peck had not told defense counsel of any notations prior to the

destruction. (It is not altogether clear from the record presented by the parties precisely what Prof. Peck remembers about any notes he might have made). The court is unable to see that the arguable injury to plaintiff would be in any way cured by an order for the production of the Doar notebooks. The real loss is not the documents, copies of which, it is undisputed, are already in the possession of the plaintiff, but the notes which might have been made on them. Production of the Doar notebooks will not replace this information. An order of production on this ground would not compensate plaintiff; it would merely punish the defendant to a degree uncalled for absent a showing of bad faith that has not been made here.

5. Defendant's Memorandum 9.

6. Advisory Committee Note to Rule 612.

7. Hearing of May 5, 1977, Tr. 4.

have the sound and quality of materials appropriate "to promote the search of credibility and memory." Accordingly, unless a privilege bars production, or is deemed so far to outweigh the benefits of production that this should not be held "necessary in the interests of justice," plaintiff's demand should be honored.

■ We are led to assess, therefore, the countervailing force of the work product privilege invoked by defendant. We come for this subject to the wealth of learning embraced in materials ranging from the landmark decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), to the more recent (1970) codification in F.R.Civ.P. 26(b)(3). In this light the court has inspected the four notebooks in question. It seems clear that they are indeed "work product" in an essential sense of the term. They are counsel's ordering of the "facts," referring to the prospective proofs, organizing, aligning, and marshaling empirical data with the view to combative employment that is the hallmark of the adversary enterprise. The pages collate the expected or imagined or hoped-for proofs of the propositions counsel has learned and written. There is the evident residue and reflection of "interviews, statements, memoranda, correspondence * * * mental impressions, personal beliefs," and other products of the advocate's professional interaction with the materials of his art. *Hickman v. Taylor, supra,* at 511, 67 S.Ct. at 393.

Characterizing the notebooks as "work product" does not end the problem. The privilege sheltering such materials may be waived. It is not, in any event, absolute.

As to waiver, there is less enlightenment than might be desired from precedent and legislative history. We are cautioned not to confuse the work product privilege with the attorney-client privilege, ruling mechanically that any disclosure to third persons destroys the former. See 8 Wright & Miller, Federal Practice and Procedure § 2024 at 210–211 (1970). There are intimations that Rule 612 was intended to leave privileges generally untouched, but other evidences weigh against a conclusion that the subject can approach such simplicity. See 3 Weinstein's Evidence 612–29 *et seq.* (1976). In the setting of modern views favoring broad access to materials useful for effective cross-examination, embodied in rules like 612 and like the Jencks Act, 18 U.S.C. § 3500, it is disquieting to posit that a party's lawyer may "aid" a witness with items of work product and then prevent totally the access that might reveal and counteract the effects of such assistance. There is much to be said for a view that a party or its lawyer, meaning to invoke the privilege, ought to use other and different materials, available later to a cross-examiner, in the preparation of witnesses. When this simple choice emerges the decision to give the work product to the witness could well be deemed a waiver of the privilege.

Similar thoughts apply in considering how absolute or qualified the privilege should be deemed to be. The answer will vary, of course, with the nature of the materials sought from the lawyer's files. Starting with *Hickman v. Taylor*, and extending to now, the authoritative pronouncements come close to, or arrive at, an "absolute immunity" from discovery of the attorney's "mental impressions, conclusions, opinions, or legal theories * * *." F.R. Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. at 510–11, 67 S.Ct. 385; 8 Wright & Miller, *supra,* § 2026 at 230–31.[8] Again, however, the sweeping language of the cited authorities has never been challenged by an instance where such immunized materials have been deliberately employed to prepare—and thus, very possibly, to influence and shape—testimony, with the anticipation that these efforts should remain forever unknowable and undiscoverable. It ought

---

8. In view of the decision against required disclosure, it is not necessary to decide whether the attorney's "mental impressions" could be excised feasibly and less sensitive materials given to plaintiff. Suffice it to say the task would be difficult, if possible at all. Obviously, given the enormous and amorphous world of available "facts," counsel's selection and ordering come close to the vital area of maximum protection under *Hickman*.

 

not to be comfortably supposed that a claim that extreme must necessarily be sustained.

There would appear, in short, to be room for allowing discovery, either on a theory of waiver or of qualified privilege, where an attempt is made to exceed decent limits of preparation on the one hand and concealment on the other. But the circumstances presented here do not on balance warrant such a ruling. There is no indication at all of a calculated plan to exploit the work product in a significant way for preparing the experts while planning to erect the shield of privilege against discovery. The materials actually made available for cross-examination are evidently voluminous and appear, so far as any evidence discloses, to cover all the concrete and specifically identifiable points on which the experts were instructed or advised for their testimony. No less importantly, given the current development of the law in this quarter, it seems fair to say that counsel were not vividly aware of the potential for a stark choice between withholding the notebooks from the experts or turning them over to opposing counsel.

All things considered, then, altering an earlier inclination and overruling the Magistrate without any sure conviction that this is an ineluctably right course, the court will order that plaintiff's demand for the notebooks should be denied.

## II:

A single member of a multi-judge trial bench may verge toward presumptuousness or futility when he or she broadcasts general pronouncements for the future. At the same time we are all commissioned to judge as best we can, now and for the future, giving fair warning if possible of where the course of decision seems to head.

In this spirit, this court notes now, with hindsight, that there is not a compelling rationale for the view that counsel may (1) deliver work product to an expert or other witness to be "useful to the client," but then (2) withhold the material from an adversary who seeks to exploit the fact of this assistance in cross-examining the witness. From now on, as the problem and the pertinent legal materials become more familiar, there should be a sharp discounting of the concerns on which defendant is prevailing today. To put the point succinctly, there will be hereafter powerful reason to hold that materials considered work product should be withheld from prospective witnesses if they are to be withheld from opposing parties.

In this instance, however, for the reasons outlined above, defendant need not make the disclosure plaintiff seeks.[9]

So ordered.

---

9. After the initial motion was made, it appeared that, in addition to the Doar notebooks, the experts had been given an analysis of market share data prepared by counsel. Work product protection has also been claimed with respect to this material. The conclusion respecting the notebooks applies to this report as well.