Peter S. O'BRIEN, as President of the Council of Supervisors and Administrators of the City of New York, Local 1, SASOC, AFL–CIO, and Solomon Zeichner, on behalf of all others similarly situated, Plaintiffs,

v.

The BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK, Irving Anker, as Chancellor of the City School District of the City of New York, and Hugh L. Carey, as Governor of the State of New York, Defendants.

No. 76 Civ. 660.

United States District Court,
S. D. New York.

May 19, 1980.

Thomas K. Kennedy, New York City, for plaintiffs.

Gary R. Tarnoff, Asst. Corp. Counsel, New York City, for City defendants.

## MEMORANDUM ORDER

LEVAL, District Judge.

Plaintiffs, who are supervisory employees of the defendant Board of Education of the City of New York, brought this action for

declaratory relief and an injunction preventing the defendants from imposing fines and penalties against the plaintiffs pursuant to N.Y.Civ.Serv.L. § 210 (1973) (hereinafter cited the "Taylor Law") in connection with the plaintiffs' participation in a strike against the Board of Education in September 1975. The plaintiffs contend that, *inter alia*, the Taylor Law is unconstitutional as applied to them because the defendants failed to use "uniform and legally satisfactory criteria" in evaluating the plaintiffs' protests to the imposition of fines.

The plaintiffs move pursuant to F.R. Civ.P. 26 & 34 for an order compelling the defendants to produce a document identified by Mrs. June Lennon, the former supervisor of the defendant Board's Strike Penalty Unit, at her deposition on March 20, 1979. The document, which was submitted for *in camera* inspection, is in the form of questions put by the Strike Penalty Committee and answers furnished by the attorney, a staff member at the Board's Office of Legal Services. The questions posit various fact situations, and the answers give the lawyer's explanation of the legal ramifications of the facts proposed.

The defendants object to production of the document in question on grounds of the attorney-client privilege and the work product rule.

The plaintiffs contend that the privilege does not bar production of the document for three reasons: the document was authored by in-house counsel; the document represents a communication by the attorney rather than by the client; and, to the extent that the document reveals any communication by the client, what is revealed is not confidential factual information but instead hypothetical questions. For the reasons stated below, I find the plaintiffs' contentions to be without merit.

■■■ The fact that the document was authored by in-house counsel rather than by an independent attorney is of no significance. The relevant inquiry is whether the attorney, regardless of his place of employment, was acting as confidential counsel to the party asserting the privilege. *See SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 522 (D.Conn.1976) (Newman, J.); *Georgia Pacific Plywood Co. v. United States Plywood Corp.*, 18 F.R.D. 463 (S.D.N.Y.1956) (Kaufman, J.); *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass. 1950) (Wyzanski, J.). In this instance, the attorney was delivering requested legal opinions in response to questions propounded by his client. The fact that the attorney and client had a common employer does not itself render communications between the two ineligible for protection by the privilege.

■■■ The authorship of the document by the lawyer, rather than the client, is not dispositive. "A communication from an attorney is . . . privileged . . . if it has the effect of revealing a confidential communication from the client to the attorney." *United States v. Silverman*, 430 F.2d 106, 122 (2d Cir. 1970). *See Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1963). To the extent, then, that the memorandum prepared by the attorney reveals confidential communications by the client to the attorney, the privilege is applicable. In any event the questions were originally put by the client and are merely copied on the document together with the attorney's answer. In the most meaningful sense, the document to the extent it consists of questions, was written by the client.

The plaintiffs contend that the only communications of the client revealed by the memorandum are hypothetical questions, and that these do not constitute confidential communications. I do not agree.

■■■ The questions are suggestive of alternative strategies and tactics under consideration by the defendant's Strike Penalty Unit in anticipation of the imposition of fines and penalties against the plaintiffs. The putting of questions in terms of hypothetical situations reveals the mental processes of the clients, its strategies, tactics and the facts and distinctions which it considered potentially important. Such a communication is entitled to protection. Under the circumstances, I find further-

more that the format employed by the client in his questions indicates that the client had a legitimate expectation that his communication to his attorney would be confidential. *See In Re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 387–90 (D.D. C.1978).

I need not consider the additional assertion that the memorandum also is privileged under Rule 26(b)(3), F.R.Civ.P.

The motion to compel production of the document is denied.