**LEUCADIA, INC., Plaintiffs,**

v.

**RELIANCE INSURANCE COMPANY, Defendant and Third Party Plaintiff,**

v.

**Edward H. HELMKE, Third Party Defendant.**

**No. 80 Civ. 0630 (PNL).**

United States District Court, S.D. New York.

Sept. 26, 1983.

Butler, Fitzgerald & Potter, Raymond Fitzgerald, Andrew W. Sidman, New York City, for plaintiffs.

Newman & Schlau, John C. Lane, Eugene Staub, New York City, for defendant and third party plaintiff.

Edward H. Helmke, pro se.

## OPINION AND ORDER

LEVAL, District Judge.

This is a motion for a protective order under Rule 26(c), Fed.R.Civ.P. Plaintiff Leucadia, Inc. seeks to hold in confidence documents generated in the course of its investigations into its own transactions. The grounds asserted are attorney-client privilege, work product privilege and irrelevance.

The complaint seeks recovery on fidelity bonds issued by defendant Reliance Insurance Company. Leucadia claims to have suffered covered losses resulting from dishonesty and fraud on the part of third-party defendant Helmke, its former employee.

### I.

The factual record submitted on the motion is sparse. The facts that emerge are as follows:

In 1976 defendant Reliance Insurance Company issued fidelity insurance bonds indemnifying plaintiff Leucadia, formerly known as James Talcott, Inc. (JTI) and a closely related entity, Talcott National Corporation (TNC),[1] against dishonesty or fraud by their employees. Reliance cancelled the bonds effective October 26, 1977.

In 1977 the Board of TNC, apparently spurred by the concerns of its creditors, formed an Ethics Committee to formulate a company policy on conflicts of interest. The law firm of White & Case assisted in drafting the policy and then conducted an investigation into past transactions to ascertain whether past conduct conformed to the new policy. This investigation resulted in a 65-page report with voluminous exhibits, headed "Memorandum to the Ethics Committee of the Board of Directors of Talcott National Corporation" ("White & Case I"). It recounts in detail a series of transactions and analyzes whether they involved conflicts of interest. This is the first document at issue on the motion.

The second is a report from the Ethics Committee to TNC's Board of Directors, dated August 8, 1977 ("Ethics Committee Report"). The report in effect summarizes the findings of White & Case; much of its language is taken directly from the White & Case report. It is styled, however, as the Committee's report of its own investigation; it refers only once to "the assistance of counsel and such others as the Committee or its counsel believed necessary." This report was excerpted in a prospectus and referred to in submissions to the Securities and Exchange Commission. Defendant asserts (and plaintiff does not deny) that it was disseminated to creditors.

The Ethics Committee Report was discussed by TNC's Board of Directors on August 30, 1977; the Board asked White & Case to prepare a further memorandum on the same transactions. White & Case then prepared a memorandum dated September 20, 1977 ("White & Case II"), which is the third document at issue.

A further investigation took place in the early fall of 1978. Its goals were to determine whether plaintiff should institute litigation to recover losses from employee misdeeds, and whether TNC or JTI could file a notice of claim under the Reliance fidelity bond by October 25, 1978. The bond covers losses sustained prior to the effective date of cancellation, October 25, 1977. In addition, it provides that the loss

---

1. The submissions do not explain the exact relationships among TNC, JTI and Leucadia; they have treated their interests as identical for purposes of privilege. The record does suggest that TNC and JTI were closely related and that they acted together in connection with some of the documents at issue on this motion. Leucadia, Inc., the plaintiff here, is said to be the successor to JTI. There is also a Leucadia National Corporation, not a party here, which is the plaintiff in No. 82 Civ. 6540 (GLG).

must be "discovered by the Insured prior to the expiration of twelve months" after cancellation. This is apparently a standard provision in fidelity bonds, designed to protect the insurer against the presentation of claims based on old occurrences which are difficult to verify. 13 Couch on Insurance § 46:190. Thus the losses were not covered unless discovered by the insured before October 25, 1978.

The law firm of Donovan, Leisure, Newton & Irvine, conducted an investigation and reported orally in late October of 1978; on October 25, 1978 plaintiff sent a notice of claim to defendant. Donovan, Leisure then produced a 29-page document with exhibits and a cover letter dated November 22, 1979 ("Donovan I"). Donovan, Leisure sent the document to a single officer who distributed it, according to plaintiff's answers to interrogatories, to the directors and "certain officers and key employees." On April 16, 1979, Donovan, Leisure wrote a further letter ("Donovan II") to the boards of TNC and JTI expressing its opinion on some of the results of its earlier investigation.[2]

The final document at issue is a notebook prepared for this litigation by plaintiff's present counsel, Butler, Fitzgerald and Potter, including some results of its investigations ("Butler Notebook").

In the Spring of 1983, defendant obtained copies of all the documents save the Butler Notebook from counsel to Brooke Grant, a former director of JTI and/or TNC who is the defendant in *Leucadia National Corp. v. Grant*, 82 Civ. 6540 (GLG). Plaintiff contends, and defendant does not dispute, that Grant had no authority to disclose these documents and that plaintiff is seeking to protect their confidentiality in the other action. One of the documents, White & Case I, has also been used as an exhibit at a deposition of Ian Cumming, Chairman of plaintiff's Board of Directors, in a suit in the District of Utah, *Grant v. Cumming*, C–82–0248A. Defend-

ant asserts that it is publicly accessible on file in that action, while plaintiff claims it has not been filed pending decision of a motion by Grant to have it sealed.

II.

Two documents, the Butler Notebook and the Ethics Committee Report, are easily disposed of.

■ The Butler Notebook was prepared for this lawsuit and defendant concedes it falls under Rule 26(b)(3). Defendant has made no showing to justify its production. It is protected from discovery.

■ The Ethics Committee Report is neither work product nor a communication with counsel. It is true that it summarizes the advice of counsel. But when privileged advice of counsel is restated by the client in an unprivileged communication, the restatement is not privileged in the client's mouth. *See United States v. International Business Machines*, 71 F.R.D. 376 (S.D. N.Y.1976). Even if the report had been privileged, the privilege was waived by its use in prospectuses and other public documents.

■ Plaintiff also claims that the report is irrelevant. While it does not directly concern the transactions at issue in this case, it may be relevant to show the practice of plaintiff in other transactions and the results of an earlier investigation. It may lead to relevant evidence. It will not be protected from discovery.

III.

■ The remaining documents consist of reports to JTI or TNC from their attorneys. Such documents are normally protected by the attorney-client privilege at least to the extent that their production would reveal communications of the client made in confidence to the attorney to enable the attorney to give legal advice. *See O'Brien v. Board of Education*, 86 F.R.D. 548 (S.D.N.

**2.** Plaintiff's original motion for a protective order did not include this letter or the cover letter to Donovan I. After defendant obtained copies

(see *infra*), plaintiff asked to add them to the list of documents for which it seeks protection.

Y.1980). There can be no question that disclosure of these documents would reveal communications by plaintiff's employees and directors to plaintiff's attorneys. *Cf. John Doe Corp.*, 675 F.2d 482 (2d Cir.1982). Three of them consist almost entirely of the presentation of what counsel learned, and the fourth, Donovan II, reveals the concerns of plaintiff's Board of Directors. Indeed it is for the content of those communications from plaintiff and its employees that defendant seeks the documents.

▊ Defendant raises two objections to assertion of the privilege for the three reports: first that the statements of the employees were not made in confidence; second that they were not gathered for the rendition of legal advice but only as part of a factual investigation. Both objections are precluded by the modern doctrine of corporate attorney-client privilege exemplified by *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). *See City of Elmira v. Larry Walter, Inc.*, 89 A.D.2d 645, 453 N.Y.S.2d 259 (3rd Dept.1982); *Cornell Manufacturing Co. v. Mushlin*, 85 A.D.2d 592, 444 N.Y. S.2d 709 (2d Dept.1981).

It appears that the employees who communicated with counsel did so at the direction of their superiors and that the corporation treated the information gathered as confidential. *See Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir.1978) (en banc); *Upjohn, supra*, 449 U.S. at 394–95, 101 S.Ct. at 685. In these conditions it is unnecessary to show also that the employees who were interviewed by counsel spoke in reliance on confidentiality. *See* 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 503(6)[04] at 503–49—503–51 ("The basic confidentiality requirement of the privilege should be enforced, but in a way compatible with corporate circumstances.").

It is also shown that the investigation was conducted by counsel for the purpose of rendering legal advice. The investigation was much like that conducted in *Upjohn, supra*, where counsel investigated the corporation's practices to determine whether it had violated legislation on corrupt payments. The Supreme Court observed that

> the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice. The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant.

*Id.*, 449 U.S. at 390–91, 101 S.Ct. at 683. Here counsel were engaged to determine whether plaintiff had legally enforceable rights against its employees or its insurer, and the privilege extends to factual matter given to counsel to enable them to render such an opinion. *See In re LTV Securities Litigation*, 89 F.R.D. 595, 601 (N.D.Tex. 1981).

### IV.

Notwithstanding the attorney-client privilege, defendant argues further that these four documents should be disclosed for other reasons.

### A.

▊ The first argument concerns Donovan I only. At a deposition, David Cumming, Vice-President and General Counsel of the plaintiff, testified that in preparation for the deposition he had looked at Donovan I. Defendant contends it is therefore entitled to receive the document under Rule 612, which provides in pertinent part:

> if a witness uses a writing to refresh his memory for the purpose of testifying, either—
>
> (1) while testifying, or
>
> (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
>
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

Since Cumming did not look at the report during the deposition, the issue falls, at best, under subparagraph (2) and the determination whether it must be produced is discretionary. I see no facts which would warrant a discretionary decision to override the privilege. The House Judiciary Committee furthermore noted in connection with this rule "The Committee intends that nothing in the Rule be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory." See 3 J. Weinstein & M. Berger, Weinstein's Evidence 612–34.

■ Cumming's testimony revealed nothing about the document or the circumstances of its creation, and there is nothing in the testimony that appears to rely on it. Moreover, since the deposition was part of a court-directed inquiry into the facts surrounding the documents, it seems especially inappropriate to penalize the plaintiff if its officers consulted them in preparation for the deposition. The mere fact that a deposition witness looked at a document protected by the attorney-client privilege in preparation for a deposition is an inadequate reason to conclude that the privilege was destroyed.

## B.

Reliance contends that the privilege was waived in several different ways.

■ It claims that White & Case I was disclosed to banks and other creditors, but it has failed to substantiate this.

■ The second contention of waiver concerns the use of White & Case I in the Utah litigation. Reliance has not countered plaintiff's affidavit stating that the document was not made public; Reliance has given no indication to whom the document has been disclosed. It has failed to show a waiver.

■ Third, Reliance claims that any privilege is overcome by the critical importance of these documents to the litigation.

3. Defendant does not cast this argument in terms of waiver; indeed it is unclear exactly what legal grounds defendant intends to invoke.

"Even where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure." *Priest v. Hennessy*, 51 N.Y.2d 62, 69, 431 N.Y. S.2d 511, 514 (1980). I find no such strong public policy. It is true that the term of the fidelity bonds obligated plaintiff to notify defendant "at the earliest practicable date" upon discovery of a covered loss, and that under certain circumstances prior knowledge on the part of particular officers or directors could be grounds for refusing to indemnify plaintiff. While the reports could tend to show such knowledge and could therefore constitute relevant evidence, defendant has not demonstrated a need for them rising to the level of a "strong public policy" that would justify overcoming the privilege.

## C.

■ As to Donovan I, however, the argument has considerably more merit. Plaintiff bears the burden of showing that a covered loss occurred, and a loss is not covered unless it is discovered within a year of cancellation, that is, by October 25, 1978. The privilege would be waived if plaintiff relied on Donovan I to establish timely discovery of the loss.[3] *See Garfinkle v. Arcata National Corporation*, 64 F.R.D. 688, 689 (S.D.N.Y.1974); *Haymes v. Smith*, 73 F.R.D. 572, 577 (W.D.N.Y.1976); *Hearn v. Rhay*, 68 F.R.D. 574, 580–83 (D.Wash.1975); *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 615 (2d Cir. 1964).

It appears that plaintiff must so rely on Donovan I, or a prior oral summary. Paragraph 20 of the complaint alleges that plaintiff discovered the loss on or about October 25, 1978. In response to interrogatories plaintiff has stated that the oral report of counsel, subsequently summarized in Donovan I, was the moment at which they learned of the loss. Defendant claims that attempts to pin down the exact

It has, however, strenuously argued that the critical importance of Donovan I for its case requires that it be produced.

dates at which particular individuals learned particular facts have been unavailing, and that plaintiff's officers continue to point to the report of counsel as the discovery of the loss.

I conclude that Donovan I constitutes a necessary element in plaintiff's case, or is in any event so critical to plaintiff's case, that the privilege must yield. In the context of this case, counsel's communication with plaintiff constituted an important disputed fact essential to plaintiff's proof. It cannot be withheld.

## D.

■ Finally, there is the disclosure of the documents to defendant's counsel by attorneys in another case. Defendants do not contend that this is a waiver of privilege. Indeed, it undoubtedly is not, since the privilege can only be waived by the client itself. Disclosure to Grant when he was an officer of plaintiff was no waiver, *Byrnes v. IDS Realty Trust,* 85 F.R.D. 679, 689 n. 1 (S.D.N.Y.1980), and subsequent dissemination by Grant or his attorney without authorization by the plaintiff is no waiver either.

■ Nor does the disclosure moot the present motion, for the documents can still be precluded from use in this litigation even if defendant in fact has access to them. "Unless the client waives the privilege," N.Y.C.P.L.R. § 4503 prohibits disclosure not only by the attorney but also by "any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney ... and the client ...."

### *Conclusion*

The Butler Notebook, the White & Case documents and Donovan II are protected from discovery under Rule 26(c). They may not be used in discovery or introduced at trial. Plaintiff is directed to disclose Donovan I to defendant.

SO ORDERED.