**UNITED STATES of America, Appellee,**

v.

**John C. SHEFFIELD and Dennis Zeke Crowder, Appellants.**

Nos. 94–3002, 94–3230.

United States Court of Appeals, Eighth Circuit.

Submitted: Jan. 9, 1995.

Decided: May 25, 1995.

Robert Simon Blatt, Fort Smith, AR, argued, for appellants.

Paul Kinlock Holmes III, U.S. Atty., W.D.Ark., Fort Smith, AR, argued, for appellee.

Before LOKEN, Circuit Judge, GODBOLD,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

GODBOLD, Senior Circuit Judge.

Appellants John C. Sheffield and Dennis Zeke Crowder were convicted by a jury on two counts of wire fraud and aiding and abetting wire fraud, 18 U.S.C. §§ 1343 and 1342.[1] Evidence sufficiently showed a conspiracy between appellants and Tommy Scamardo. Scamardo, at Sheffield's instigation, was to sell Sheffield's Mercedes Benz automobile, a convertible, and Sheffield would report the car as stolen and collect the insurance proceeds. Sheffield and Scamardo were friends, and at times Sheffield had loaned the Mercedes to Scamardo. The vehicle had a $17,000 lien against it.

Scamardo took the car to Crowder, who operated a used car lot, explained the scheme to him and offered to sell the car to Crowder for $10,000, which Crowder declined, then for $5,000, which Crowder agreed to pay. Crowder made a down payment, $500 or $800, and took possession of the car. Payment of the balance was to be made on delivery of title papers, the convertible top and the spare tire. Soon thereafter Scamardo advertised for sale the top and spare tire and sold them to a third party. Sheffield wished to keep the original key to the car to support his contention that the car was stolen while he had possession of the key and because of the possibility that the insurance company, or an investigating officer, might ask for the key. Sheffield, Scamardo, and Crowder traveled around Fort Smith, Arkansas, together in a pickup truck, trying to find a locksmith to make a new key.

Sheffield, who lived in Arkansas, reported to police that his car had been stolen from the parking area of a mall in Tulsa, Oklahoma. He filed a claim with his insurance company for the alleged theft and was paid $23,500. Crowder kept the car at his used car lot for a brief period. Then it was taken to the home of his daughter, where it was kept in her garage. Later it was moved to the home of Crowder's mother-in-law, where police, operating from a tip, discovered it some eight months later. Ultimately the insurance company sold the car for $12,000.

The issues before us concern a *Brady* claim for failure of the government to produce allegedly exculpatory statements by a witness or witnesses, refusal of a jury instruction on bad faith, assessment in sentencing of two levels for more than minimal planning, and a claim for ineffective assistance of counsel. We find no merit in any of these contentions and affirm the convictions and sentences.

The government's prime witness was Scamardo, who had plea bargained in an unrelated fraud case and agreed to cooperate in the present case. He described negotiations with Sheffield in which Sheffield told him he would report the car as stolen and collect on his insurance and requested Scamardo to dispose of the car for an amount equal to the deductible on his insurance policy. Scamardo described his subsequent negotiations with Crowder in which he told Crowder of the scheme and Crowder made the purchase. He also discussed the efforts to secure a new key.

Crowder testified in his own defense. He described buying the car from Scamardo but denied knowing of the Scamardo/Sheffield scheme. He explained that he was keeping the car until it could be repaired and the convertible top and spare tire delivered by Scamardo. Crowder had cooperated with police in their investigation. Detective Clay Thomas, who was in charge of the investigation, set up a recorded telephone call from Crowder to Scamardo in which Crowder inquired about delivery of the top and spare tire, but the call was fruitless because Scamardo declined to discuss the matter.

■ At trial, on cross-examination, Thomas was asked whether he had taken a statement from Scamardo. He responded that he did not recall doing so. Inquiry then shifted from a Scamardo statement to Thomas's in-

---

*The HONORABLE JOHN C. GODBOLD, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. The Honorable Jimm Larry Hendren, District Judge for the Western District of Arkansas.

vestigative file. Thomas testified that he did not have his file with him, that he had sent it back to his office because he had trouble keeping up with it on breaks and did not want to carry it with him to the stand. Thomas acknowledged that he had reviewed the file before testifying but stated that he did not need it to refresh his recollection with respect to anything to which he had testified. The court, in obvious reference to Fed.R.Evid. 612, denied the request on the ground there had been no showing that Thomas had used the file to refresh his recollection.

The court's denial, based on Rule 612, was not error. The court accepted Thomas's testimony that he reviewed the file, which would have included any statement from Scamardo, but did not use its contents to refresh recollection. "[E]ven where a witness reviewed a writing before or while testifying, if the witness did not rely on the writing to refresh memory, Rule 612 confers no rights on the adverse party." 28 Wright & Gold, *Federal Practice and Procedure* § 6185, p. 465 (1993). Moreover, even if a writing has been used to refresh memory of a witness before testifying, the court may require furnishing the statement only if in its discretion it determines it is necessary in the interest of justice. The district court was well within its discretion. Rule 612 is not a vehicle for a plenary search for contradictory or rebutting evidence that may be in a file but rather is a means to reawaken recollection of the witness to the witness's past perception about a writing. *Id.* at p. 446. The contents of such a writing may not even be read into evidence.[2]

On appeal appellants have shifted from Rule 612 to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which was not mentioned at trial. A request from the defendants is not a prerequisite to the government's duty to disclose under *Brady.* *U.S. v. Agurs,* 427 U.S. 97, 101–02, 96

S.Ct. 2392, 2396–97. 49 L.Ed.2d 342 (1976).[3] It is plain from the trial record, however, that defendants were saying that the government's file, including but not limited to any statement from Scamardo (if there was such a statement), was relevant as evidence to impeach Scamardo's version of how he obtained the Mercedes. Impeachment evidence is within the *Brady* rule. *Giglio v. U.S.,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, in *U.S. v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court made it clear that suppression of impeachment evidence does not per se constitute a direct restriction of the scope of cross-examination. Rather, the prosecution's failure to disclose information that might have been helpful in conducting cross-examination amounts to a constitutional violation only if it deprives the defendant of a fair trial. *Id.* at 678, 105 S.Ct. at 3381. The "fair trial" standard was not violated in this instance. After defendants were denied access to the government file, they asked that Thomas be required to remain in attendance to testify for the defense if desired. He did remain but was never called as a defense witness, and the defense made no effort to require him as a defense witness to produce his file, or to subpoena it.

Additionally, under *Brady* withheld evidence must be "material," and undisclosed evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). That probability is not present in this case. The defense inquiries were based upon the possibility that something in the file might reveal that Scamardo or some other (unidentified) witness had given a different version of how Scamardo came into possession of the car.

---

**2.** Also, in criminal proceedings Rule 612 is limited by the Jencks Act, 18 U.S.C. § 3500. Because of our decision we need not explore the somewhat complex interplay between the rule and the Act. *See* Wright & Gold at § 6186.

**3.** In a one-sentence statement appellants' brief says that prior to trial they filed motion(s) for discovery and for disclosure of exculpatory evidence. The record before us does not contain the motion or reveal either what it said or what happened to it. Because of our decision we need not inquire further into these details.

But it was not available to Sheffield to contend that he had loaned the car to Scamardo and that Scamardo had sold it without authority, for he had reported to Tulsa police that the car was stolen from the mall area and had helped police search the area for the vehicle. He had reported it to the insurance company as stolen. The defense suggested that Scamardo had gone to Tulsa and himself stolen the car, but no evidence—direct or indirect—supported this theory. Moreover, the evidence that Sheffield had entrusted the car to Scamardo with instructions to sell it was supported by the testimony describing efforts to get a new key. Dealings between Sheffield and Scamardo were substantiated by evidence of telephone calls between them made immediately after the alleged theft was reported. Crowder's removal and concealment of the car were inconsistent with any theory that he bought it in an arm's-length transaction from Scamardo. Finally, the defense's unavailed opportunity to secure the file after Thomas was held available as a witness tends to indicate that the defense wanted the argument about non-availability of the file more than it wanted the file itself. Non-availability, and the government's unwillingness to produce, were argued to the jury in the defense's closing argument. We cannot say that the government's nondisclosure of the file undermined confidence in the result or deprived defendants of a fair trial.

■ The trial court did not err in refusing Sheffield's requested charge that his good faith was a complete defense to charges of wire fraud (based upon the telephone calls to Scamardo and Crowder on the day of the alleged theft of the car). Scamardo testified that Sheffield told him he would report the car stolen from a mall in Tulsa, and that, accordingly, Sheffield called Scamardo immediately after the alleged theft, to tell him that the car had been reported stolen. Sheffield first called Scamardo at Scamardo's office and, unable to reach him, then tried to call him at Crowder's used car lot. Telephone records also revealed that Sheffield called Crowder twice on the day of the purported theft. Sheffield testified that he called Scamardo because he "had a premonition" that Scamardo might know something about where the car was. There is no rational

explanation of why Sheffield would be making such an inquiry to an acquaintance in Fort Smith, Arkansas, about the purported theft of his car from a Tulsa, Oklahoma, parking area. Nor does Sheffield clearly explain why he was calling Crowder.

The requested instruction was not adjusted to these facts. The difference between the testimony of Sheffield and Scamardo did not relate to Sheffield's intent or state of mind in making the telephone calls but in the subject matter discussed. In this context good faith alone could not be completely determinative of guilt. If the jury accepted Scamardo's testimony of the subject matter, good faith could not be a defense to Sheffield, for his act, as a participant in a fraud, in reporting to another participant that a phase of the fraud had been consummated.

No discussion is necessary for the contention of each appellant that the court erred in adding points to his base level offense for more than minimal planning.

■ Both appellants assert that they were deprived of effective assistance of counsel because counsel did not subpoena the investigative file of Detective Thomas after Thomas was held available as a witness. At oral argument the court questioned whether the record is sufficient to decide this issue. Appellants insist that it is and ask us to decide it, so we do so and hold that the claim of ineffectiveness of counsel is without merit. The record gives no more support to an inference of shortcoming than to an inference of tactical choice. The only clue to the thinking of counsel is a statement at sentencing by counsel for Crowder that perhaps his not subpoenaing the file was a strategic decision. And nonproduction of the file was argued to the jury, described as matter that the government did not want the defense to have. Tr. III, p. 540. Moreover, the record does not disclose that the file would have been helpful, for the record is silent as to its actual contents.

The judgment of the district court is AFFIRMED.