Karen SUSS, Plaintiff,

v.

MSX INTERNATIONAL ENGINEERING SERVICES, INC., Defendant.

MSX International Engineering Services, Inc., Counter–Claimant,

v.

Karen Suss, Laurence A. Levine, Larkav, Inc., Karlar Temporaries, Inc., Counter–Defendants.

No. 02 Civ. 0667(RMB)(RLE).

United States District Court, S.D. New York.

Dec. 19, 2002.

Stuart A. Blander, Heller, Horowitz & Feit, PC, New York City, for Karen Suss.

Robert P. Lewis, Baker & McKenzie, New York City, for MSX Intern. Engineering Services, Inc.

## OPINION & ORDER

ELLIS, United States Magistrate Judge.

Before the Court is the request by plaintiff and counter-defendant Karen Suss, and counter-defendants Laurence A. Levine, Larkav, Inc., and Karlar Temporaries, Inc. (collectively, "movants"), for an order directing

defendant MSX International Engineering Services, Inc. ("MSX") to produce certain documents from its privilege log. According to movants, these documents were shown to witnesses prior to their depositions in order to refresh their recollections, and under Federal Rule of Evidence 612 must now be produced for inspection. For the reasons which follow, the request is **DENIED.**

## I. BACKGROUND

In October 1998, MSX purchased two personnel staffing companies—Lexstra International. Inc., ("Lexstra") and Lexus Temporaries, Inc. ("Lexus") (collectively, the "Acquired Businesses")—which were owned and operated by Levine and Suss. The terms of the purchase included an initial cash payment of twenty-four million dollars ($24,000,000), and three annual "earn-out" payments, in amounts to be determined later. In connection with the transaction, Levine and Suss continued to operate the Acquired Businesses as MSX employees. In late 1999, Levine and Suss advised MSX executives that Lexus was being considered by Bell Atlantic to staff and operate a Bell Atlantic "call center." Bell Atlantic ultimately awarded Lexus a one-year contract for the call center, with options for renewal. One of Lexus's obligations under the contract was to obtain suitable office space in lower Manhattan to house the call center. The space selected required the execution of a lease whose term exceeded one year. Although the call center subsequently lasted beyond one year, it ceased operations prior to the end of the office lease.

### A. Movants' Position

According to movants, MSX has refused to pay the earn-out for 2000 because it claims that Levine and Suss defrauded MSX into incurring the costs (including the multi-year lease) associated with the call center project. Because of the fraud allegations, movants contend that they "are entitled to develop, through discovery, the state of MSX's awareness and consideration of the disparity between the stated one-year term of the call center project and the multi-year duration of the lease that was to be executed

in connection with the call center." Letter from Mark C. Zauderer to Court, dated November 4, 2002 ("Zauderer letter"). To explore this issue, Suss and Levine took the depositions of Robert Deming, an MSX employee who was involved in the selection and procurement of office space for the call center project, and Shannon Nichols, an in-house MSX attorney who played a role in the negotiation of the call center lease. At the depositions, the witnesses were shown a copy of MSX's privilege log, and asked whether they had reviewed documents appearing on the privilege log in preparation for their depositions. *See* Deposition of Robert Deming at 20–21; Deposition of Shannon Nichols at 38. Movants argue that the witnesses testified unequivocally that the review of these documents refreshed their respective recollections concerning the facts about which they testified, but were directed not to answer questions concerning the contents of the documents used to refresh their recollections. Movants maintain that they are entitled under Federal Rule of Evidence 612 to have these materials produced.

In support of their position, movants assert that courts in this circuit have followed a two-step process in applying Rule 612. First, the court determines whether the witness relied upon the documents sufficiently to trigger the rule. Once the rule is triggered, the court determines whether the production of the documents "is necessary in the interest of justice." *See, e.g., EEOC v. Johnson & Higgins, Inc.,* 1998 WL at 778369 * 11–12 (S.D.N.Y.1998) (handwritten note prepared by attorney and shown to witness in preparation for deposition must be produced); *Jolly v. Coughlin,* 1995 WL 495641, * 2 (S.D.N.Y.1995) (handwritten note prepared by attorney and shown to witness should be produced "under the discretionary standard of Rule 612(2)"); *Bank Hapoalim B.M. v. American Home Assurance Company,* 1994 WL 119575, * 7 (S.D.N.Y.1994)(privileged documents must be produced where they were shown to witness and they "inform[ed] ... his deposition testimony"); *In re Joint Eastern & Southern District Asbestos Litigation,* 119 F.R.D. 4, 6 (E.D.N.Y. 1988) (party "may ... gain access to the portions of the [documents] upon evidence

that it was used by witness to refresh his recollection"). According to movants, "the law is clear that in circumstances such as this, where a witness reviews an otherwise privileged document that refreshes his recollection for the purposes of testimony, that document must be produced." Zauderer letter at 3.

## B. MSX's Position

According to MSX, the attorney-client privilege can only be waived if the witness (1) reviewed the document *and* (2) relied on it in testifying. When a witness merely reviews a document, Rule 612 does not require production. Letter to Court from Robert P. Lewis, dated November 4, 2002; *see, e.g., Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 494 (S.D.N.Y.1993) ("As for Rule 612, AmBase must show not only that the witness reviewed the documents in preparation for his deposition, but that he relied upon them in testifying."); *J. Edward Robinson v. Time Warner, Inc.,* 187 F.R.D. 144, 147 (S.D.N.Y.1999) ("While Levien did review certain documents prior to his deposition, however, this review alone does not automatically trump claims of privilege or work product protection. Robinson must 'not only show that [Levien] . . . reviewed the documents in preparation for his deposition, but that he relied upon them in testifying.'") (citing *AmBase,* 150 F.R.D. at 494); *Leucadia, Inc. v. Reliance Insurance Co.,* 101 F.R.D. 674, 679 (S.D.N.Y.1983) ("The mere fact that a deposition witness looked at a document protected by the attorney-client privilege in preparation for a deposition is an inadequate reason to conclude that the privilege was destroyed."). MSX maintains that there was no actual reliance in this case, and therefore, the attorney-client privilege remains intact.

## C. The Relevant Portions of the Depositions

1. Robert Deming (pp. 19–21)

Q. Which reminds me to ask you, could you tell me what you did to prepare for the deposition here today?

A. What I did?

Q. Yes.

A. I went back through—looked back through my personal records to see if I had anything that could refresh my memory, and I also met with our attorneys, and that was it.

Q. When did you meet with your attorneys?

A. Twice. Once in July and then this morning for a moment.

. . . .

Q. What documents, if any, did you review to help refresh your recollection for this testimony here?

A. We looked at E-mails, for the most part.

Q. Did those help refresh your recollection?

A. Not as much as I would like. Rather spotty.

Q. I'm just going to show you now, just so you know what it is, it's a list of certain documents that have been listed by your counsel, and I'm going to ask you to look at that list and tell me, from the description there, whether you have reviewed any of those documents. This doesn't have the marking on it, but this is the privileged log, which we previously marked as Exhibit 6. Let me show you this list. It describes particular memos or other documents and it has a column called subject matter. I would like you to look at that list in order to answer my question.

A. And your question again was?

Q. The question is whether you reviewed any of those documents in connection with the preparation for your deposition?

A. Some look familiar to me; some don't.

Q. Which ones look familiar to you?

A. The ones that relate to the lease document itself from Shannon Nichols.

Q. Can you just identify them by date?

A. 12–14, 1–6, 1–12 and 1–13, and the rest don't—

Q. If I could take that from you then.

A. I'm sorry, the environmental one does too, I 1–19.

Q. Thank you. Which of those did you review—withdrawn. Which of those as-

sisted you in refreshing your recollection for this deposition?

A. I can't tell from looking at just the topics.

Q. Some did; is that right?

A. Mm-hmm.

Q. You have to say yes.

A. Yes, I'm sorry. Yes, some did.

2. Shannon Nichols (pp. 38–41)

Q. Did looking at those documents help refresh your recollection to testify today?

A. It helped me recall dates and time periods mainly, yes

Q. And were any—withdrawn.

Are you aware whether certain documents have been withheld from production as privileged documents by your counsel in this case?

A. Mr. Murphy showed me yesterday an attorney-client privilege log that calls out certain documents.

Q. Were any of the documents that are on that log among the documents you reviewed, as you just described you reviewed your file?

A. Yes.

Q. And did they help you refresh your recollection to testify?

A. I am sure that they did.

Q. Can you tell me what those documents were, the ones that helped, that you just alluded to that were on the list?

A. You want me to identify the documents on the attorney-client privilege log that helped refresh my memory?

Q. Yeah.

A. There were some memos from me to my internal clients. That was mainly— and there was some correspondence between myself and internal clients. It would mainly be those documents.

. . . .

THE WITNESS: Can you rephrase what you would like me to do?

Q. (BY MR. ZAUDERER): The document that you reviewed that assisted in refreshing your recollection before the deposition, that is on the privileged list, the document or documents, you referred to a memo and there may have been others.

A. I think I recall, specifically, the memo with the date 1–6–00, to Fred Minturn and Bob Deming.

Q. Yes, got it.

A. I'm having a hard time specifically recalling any of them, to be honest. I mean, they all helped to refresh my memory, to a certain extent, but specifically I'm not recalling any of them by date.

Q. Okay. Then let me, for example, ask you about the one that you just referred to, 1–6–00. Can you tell me, to the extent you can, what was the content of that?

MR. MURPHY, Object to the question to the extent it calls for the witness to disclose communications that are privileged, but to the extent you can answer the question without disclosing those communications, go ahead.

MR. ZAUDERER: I would object to that, based on the record here. I don't want to get in a debate on it.

MR. MURPHY: Don't answer—to the extent you can answer it without disclosing attorney-client communication, go ahead.

THE WITNESS: And you asked me for the content of that document? To me, the content would be protected by the attorney-client privilege. I can't answer it.

## II. DISCUSSION

Federal Rule of Evidence 612 provides, in relevant part, that:

[I]f a witness uses a writing to refresh memory for the purpose of testifying . . .

(1) while testifying, or

(2) before testifying, if the court in its discretion determines it is necessary in the interest of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

In addition, the Advisory Committee notes provide that "nothing in the Rule [should] be considered as barring the assertion of a privi-

lege with respect to writings used by a witness to refresh his memory." Advisory Committee Notes, FED.R.EVID. 612 (1974). In applying Rule 612, courts must balance the tension between the disclosure needed for effective cross-examination and the protection against disclosure afforded by any relevant privilege.

## A. Rule 612 and Privileges

A review of the cases in general, and the specific cases relied on by the parties, indicates that courts have been grappling with the scope of Rule 612 with varying degrees of clarity. The one area of agreement appears to be that the standard for production varies between Rule 612(1) and 612(2). Thus, if the witness uses the document while testifying, it must be produced. If the document was reviewed at some earlier time, the court may use its discretion in deciding whether it need be produced. Beyond that, however, the cases do not provide a uniform analytical framework. In particular, it is not clear that the courts have sought to distinguish between the various kinds of privileges which can be invoked. For example, the leading case in this circuit, *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613 (S.D.N.Y. 1977), involves the application of Rule 612 when one party makes a claim of work product. The court was particularly concerned that a lawyer might " 'aid' a witness with items of work product and then prevent totally the access that might reveal and counteract the effects of such assistance." *Id.* at 616. The court found, however, that "[t]here [was] no indication at all of a calculated plan to exploit the work product in a significant way for preparing the experts while planning to erect the shield of privilege against discovery." *Id.* at 617. No disclosure was ordered, though the court warned that the result might be different in future cases if materials were shown to witnesses. *Id.*

The type of balancing engaged in by the *Berkey* court is appropriate when a claim of work product is interposed. Rule 26(b)(3)FRCP provides, for example, that:

(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The court is thus charged with assessing such things as "substantial need" and "undue hardship."

In contrast, materials protected by the attorney-client privilege are discoverable only upon a showing of waiver:

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Machinery Corporation*, 89 F.Supp. 357, 358–59 (D.Mass.1950). Rather than weighing various factors of "need to know" and "hardship" to the other party, a court faced with a claim of attorney-client privilege should focus on two inquiries: (1) Was the privilege properly invoked? and (2) Did some action of the party seeking to invoke the privilege act as a waiv-

er of the privilege? Applying this analysis to Rule 612, the relevant inquiry is not simply whether the documents were used to refresh the witness's recollection, but rather whether the documents were used in a manner which waived the attorney-client privilege. This could happen, for example, if privileged communications were disclosed to an individual outside the privileged relationship. *In re von Bulow*, 828 F.2d 94, 102–03 (2d Cir.1987). On the other hand, the privilege would not be lost if an individual were to review his own already privileged documents. *See, e.g.,* Wright & Gold, *Federal Practice and Procedure: Evidence* § 6188 at p. 485.

This approach is consistent with the language of Rule 612. While the rule indicates that a court should use discretion when documents are reviewed before testifying, it does not purport to change the law with respect to privilege. The Advisory Committee notes state that the rule does not bar assertion of a privilege. Thus, any discretion used by the court should take into account the particular privilege being asserted. The legislative history supports this conclusion. For example, in responding to a question concerning the impact of the rule on an attorney's work product, the chair of the subcommittee which drafted the rule stated:

> MR. HUNGATE: [T]he attorney's work product would not be subject to . . . inspection.

120 Cong. Rec. 2381 (1974). Later, when pressed as to whether the new rule would change the existing law with respect to privileges, he reaffirmed that the rule would not change the law with respect to privileges:

> MR. WHITE So this is a radical change. The point I am trying to make is that this is an inconsistency, that a man would have to produce the writings that he had used prior to coming to testify, whatever he refreshed his memory on, but he probably could not use the same writing in that regard, if these were self-serving to him. The lawyer's own work product would then be subject to inspection if it was used to refresh the memory of a witness, and thus you have intruded into a very established rule of law.

> MR. HUNGATE However, we come back to the fact that this does not wipe out the other sections of the law, or the law as it exists regarding the privilege of attorney-client relationships, or their work products.

*Id.* at 2382. Further, the legislative history reveals that the intent of the rule was to *limit* the mass production of documents simply because some documents were used to refresh recollection:

> MR. WHITE You see, the way it reads, it says "before testifying." In other words, if you use it before testifying then it is a memory refresh[er].

> MR. HUNGATE It can become a discretionary matter with the court in that case. The rule was originally broader than this, as I recall it. We have tried to narrow the past rule, the rule that [at] one point could have meant bringing in everything you used to refresh your memory, and the committee has sought to restrict that. You could use the classic examples, for instance, of patent cases or antitrust cases where you might have several large railroad boxcars full of documents, and to force them to be brought in could prove to be harassment.

> MR. WHITE Does not the chairman's own interpretation mean that at the court's discretion the court could insist that the adverse party bring to the opponent the material on which the witness refreshed his memory, is that correct?

> MR. HUNGATE The gentleman is raising a good point, because I think the gentleman is putting two legal concepts at each other's throats, one would be perhaps the original work product of the attorney, and I am not qualified to say that this is paramount, but it was not meant to repeal the attorney client relationship, and, let me add, this does not write that out of its present existence. It does not do away with it. What we concentrated upon was in these extremely long cases where there would be lots and lots of documents, and where it would be a harassment to have them all brought in.

*Id.* at 2381–82.

 It is well-settled that, once properly invoked, the attorney-client privilege is not

vitiated in the absence of an actual or implied waiver. In the present case, movants have presented no evidence to support a finding of waiver. It appears that both witnesses were within the zone of privilege. Nichols testified that she reviewed "some memos from me to my internal clients" and "correspondence between myself and internal clients." Deming testified that the items on the log of which looked "familiar" to him were the "ones that relate to the lease document itself from Shannon Nichols." Rather than indicating waiver, this testimony shows that the privileged documents were restricted to individuals covered by the privilege.

### B. Did the Witnesses Rely on Privileged Documents?

Even were the Court to allow disclosure of attorney-client communications under some circumstances, this would not be an appropriate case because movants have failed to demonstrate that the witnesses relied on the documents in question. "Relied upon" means more than simply reviewing. As stated in the Advisory Committee notes, "[t]he purpose of the phrase 'for the purpose of testifying' is to safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure that access is limited only to those writings which may fairly be said in fact to have an impact upon the testimony of the witness." Advisory Committee Notes, FED.R.EVID. 612 (1974). Unless there is some demonstrated impact on the witnesses testimony, the witness cannot be deemed to have relied on the document.

> Rule 612 requires that, for an adversary to obtain production of a writing, the witness must have actually relied on the writing to refresh his or her memory. Thus, even if the witness consults a writing while testifying, the adverse party is not entitled to see it unless the writing influenced the witness's testimony.

4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 612.04[2][b][i] (2d ed.1997); *see also United States v. Sheffield,* 55 F.3d 341, 343 (8th Cir.1995) ("[E]ven where a witness reviewed a writing before or while testifying, if the witness did not rely on the writing to refresh memory, Rule 612 confers no rights on the adverse party.") (citing 28 Wright & Gold, *Federal Practice and Procedure* § 6185, p. 465 (1993)); *Leucadia, Inc. v. Reliance Ins. Co.,* 101 F.R.D. 674, 679 (S.D.N.Y.1983) (Fact that witness looked at document in preparation for deposition did not destroy attorney-client privilege because "testimony revealed nothing about the document ... and there [was] nothing in the testimony that appear[ed] to rely on it."); *Jos. Schlitz Brewing Co. v. Muller & Phipps (Hawaii), Ltd.,* 85 F.R.D. 118, 120 (W.D.Mo.1980) (Absent "showing that each document had been studied by the witness prior to testifying," attorney-client privilege not waived because witness "looked at" file). Here Deming's testimony that "some" of the documents "look familiar" falls far short of showing reliance. Similarly, Nichols's testimony that she had "a hard time specifically recalling any of them," undermines any claim that she relied on the documents.

### C. Exercise of Discretion under 612(2)

Finally, even under the broadest interpretation of the rule, it requires disclosure only "if the court in its discretion determines it is necessary in the interests of justice." In this case, there is no evidence that any privilege matter was disclosed during the deposition. Moreover, the evidence is ambiguous, at best, concerning the impact of the documents on the testimony. Given the special protection afforded the attorney-client privilege, the Court finds no reason to order disclosure.

### III. CONCLUSION

The attorney-client privilege is not waived by the mere fact that a witness reviewed privileged documents to refresh recollection prior to testimony. Documents reviewed by witnesses Deming and Nichols are not subject to disclosure. Moreover, movants have not demonstrated that the witnesses relied on the documents or otherwise demonstrated that the interests of justice would be furthered by disclosure.