Diane S. REDVANLY, Plaintiff,

v.

NYNEX CORPORATION, Nynex Mobile Communications Co., and Andrew Coticchio, Defendants.

No. 92 Civ. 2325 (LAP).

United States District Court, S.D. New York.

Oct. 15, 1993.

Lee F. Bantle, Beldock, Levine & Hoffman, New York City, for plaintiff.

Ronald Green and Dean Silberberg, Epstein, Becker & Green, P.C., New York City, for defendant NYNEX Mobile Communications Co.

## OPINION and ORDER

GRUBIN, United States Magistrate Judge:

In this action, filed in January 1992 pursuant to Title VII of the Civil Rights Act of 1964 and other federal as well as state law provisions, plaintiff alleges discrimination against her on the bases of gender and national origin, defamation and breach of contract. Plaintiff currently seeks disclosure of a set of notes made by Alan Stein, an in-house attorney of defendant NYNEX Mobile Communications Company ("NYNEX"), as to which NYNEX claims work product protection. For the reasons discussed below, it is hereby ordered that the document be produced.

Plaintiff began work at NYNEX in January 1987 and, after a series of promotions, became Director of Finance in May 1989, holding that position until the date of her termination, July 16, 1991. In early 1991 plaintiff made an internal complaint about sexual harassment and other discriminatory treatment by Andrew Cotiochio who had become Chief Financial Officer and, hence, her supervisor in August 1990. Her termination occurred at a meeting on July 16, 1991 with Mr. Stein, Edward Wholl, Vice President and General Counsel for NYNEX, Wendy Fleder, Vice President of Human Resources, and Andrew Coticchio. The reasons plaintiff was given for her termination, which she contends were pretextual, were (1) her own harassing treatment of one of her subordinates, Patricia Healy, who had made various allegations against her, and (2) her lack of managerial skill. It will be necessary to set forth some procedural history to understand the ruling herein.

Last October during a pretrial conference, plaintiff's counsel sought production of, *inter alia*, notes that Stein had made during the July 16, 1991 meeting. Defendant's counsel argued that these notes were entitled to protection from disclosure because they were the "absolute" work product of Stein as they were his mental impressions and thoughts in anticipation of litigation. Plaintiff's counsel argued, however, that the notes would contain a factual recounting of the meeting which he needed in order to learn what oc-

curred at that meeting. In an oral ruling I held that, even if the notes were only "factual," they could still be work product if made in anticipation of litigation and that plaintiff's counsel failed to establish at that time any "substantial need" for them under Fed. R.Civ.P. 26(b)(3) because plaintiff herself was at the meeting and the other attendees could relate what occurred through depositions which had not yet been undertaken. On January 5, 1993 during a telephone conference, plaintiff's counsel renewed his application for production of Stein's notes based on newly-learned facts. Since my ruling in October, the depositions of Wholl, Fleder and Stein had taken place. During those depositions it was learned that both Wholl and Stein, in preparation for each of their depositions, had reviewed Stein's notes of the meeting. The notes were an account of the meeting which, Stein testified, "generally helped me to recall the meeting." (Stein deposition at 13.) Wholl was not asked whether or not his review of the notes refreshed his recollection of the meeting. At their respective depositions, when asked whether plaintiff during the meeting admitted or denied the allegations of Patricia Healy, plaintiff testified that she denied the material ones. Wholl, on the other hand, testified that plaintiff sat mute or, if she responded, he does not recall; Stein testified that plaintiff sat silently when confronted with Healy's allegations and he does not recall plaintiff's having said anything at all at the meeting (except one statement not relevant hereto); and Fleder testified that plaintiff responded to the allegations directly and admitted the most damaging of those allegations. (With respect to the most damaging allegation (threatening Healy with assault), Fleder testified to an attempted explanation by plaintiff, while Wholl testified specifically that plaintiff made no response at all.) The purpose of the meeting was to seek plaintiff's "point of view and her information in order to determine how to proceed." (Fleder deposition at 99.) Fleder testified that if plaintiff had satisfactorily disputed Healy's allegations instead of admitting them, she would not have been terminated. Based on this new information, I told counsel that first, it had become indeed ques-

tionable whether Stein's notes were work product material at all since they appeared to be a contemporaneous factual recounting of a meeting held in the regular course of business to investigate the situation and not in anticipation of any pending or even threatened litigation. However, I ruled that issue did not need to be resolved since, in any event, even if work product, the notes would have to be produced because, insofar as Wholl and Stein had read them to prepare for their depositions, plaintiff's counsel had the right to the opportunity to learn how the notes may have affected their testimony pursuant to Fed.R.Evid. 612.

NYNEX appealed this oral ruling to Judge Preska. Asserting simply that I had not reversed my October ruling that the notes were privileged work product, NYNEX contended that plaintiff had waived her right to challenge that prior ruling and that disclosure of the notes would "impair the integrity of the adversarial system" and "completely undermine and erode the work product privilege." (Memorandum of Law in Support of Defendants' Objection to Magistrate Judge Grubin's Order at 2, 9.) Defendant inaccurately advised Judge Preska that "[t]he notes of Alan Stein taken at the July 16, 1991 meeting have been previously found to reflect Mr. Stein's personal, professional, selective mental impressions and thoughts regarding what transpired at the meeting...." (*Id.* at 6.) Defendant predicted the horror that, if my ruling were allowed to stand, "simply because one or more attorneys within the same corporate legal department or law firm who are working on the same matter review, as they rightfully should" a privileged document, the privilege would be waived and the "confidences, strategies, mental impressions, and opinions" of attorneys would be discovered. (*Id.* at 2, 10.) In a brief order, Judge Preska returned the issue to me because I had not issued a written ruling that would show my balancing under Rule 612 of " 'the competing interests in the need for full disclosure and the need to protect the integrity of the adversary system protected by the work-product rule.' *In re Joint E. and S. Dist. Asbestos Litig.,* 119 F.R.D. 4, 5 (E.D.N.Y. & S.D.N.Y.1988)." (Order of Feb. 17, 1993).

In light of Judge Preska's remand and the representations that had been made by defendant's counsel, I requested that the notes be submitted for *in camera* review. Having now reviewed them *in camera* (something which I see with hindsight could have avoided a waste of resources if done earlier), I find it an unhappy but inescapable conclusion that defendant's counsel misled both me and Judge Preska. I find that the notes are not work product material. I further find that even if they were, it is not their disclosure that would impair our adversarial system but, rather, their nondisclosure.

The work product doctrine, codified in Fed.R.Civ.P. 26(b)(3), reads in pertinent part as follows:

Trial Preparation: Materials.... [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The first sentence of the Rule provides that if a party prepared a document in anticipation of litigation or for trial, that party's adversary may not obtain disclosure of that document unless the adversary has "substantial need" for it in preparing its case and is unable to obtain its equivalent by other means without undue hardship. The point of the doctrine, as explained in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), is that one party has no right to discovery of material gathered for

the purposes of litigation through the efforts of another party when the first party could obtain the same information through its own efforts. "Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman v. Taylor,* 329 U.S. at 516, 67 S.Ct. at 396. On the other hand, because we favor liberal disclosure in our system of justice so that all the relevant facts of a case may be known and presented at trial to assure a just adjudication, this protection of a party's work is qualified, in that it gives way if the information contained in it is important to the other party's preparation of the case and that party is unable to obtain such information without "undue hardship." There are, moreover, what is sometimes referred to as two levels of work product. The second sentence of Rule 26(b)(3) provides a level of heightened protection for certain material. It instructs the court that even when the desired protection of a party's factual work on a case is outweighed by the other party's substantial need and the information should, therefore, be disclosed, the court should protect from disclosure any "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" contained in the material. The reason for this heightened protection of a party's or its attorney's mental impressions or opinions is one of common sense. First, a litigant is entitled only to discovery of the facts relevant to a case and not his adversary's opinions or theories about the litigation which generally would be wholly irrelevant to the factual merits of the action. But more, the particularly strong showing needed to overcome work product revealing an attorney's impressions and thought processes is necessary to protect the adversary system and the relationship between lawyer and client. The work product doctrine is designed to assist an attorney in freely preparing a client's case and the "orderly development and presentation" of the case at trial. *Martin v. Valley Nat'l Bank,* 140 F.R.D. 291, 320 (S.D.N.Y.1991) (quoting *United States v. Nobles,* 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975)). The Supreme Court's classic explanation in *Hickman* still stands as one of the best statements of the rule's rationale:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.... Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor,* 329 U.S. at 510–11, 67 S.Ct. at 393–94. Contrary to apparently popular belief among the bar and defendant NYNEX, however, the privilege against disclosure of even a party's attorney's mental impressions, conclusions, opinions and theories is not "absolute" and may have to yield in appropriate circumstances. *See, e.g., Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992); *In re Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991,* 959 F.2d 1158, 1166 (2d Cir.1992); *In re John Doe Corp.,* 675 F.2d 482, 492 (2d Cir.1982); *Golden Trade, S.r.L. v. Jordache,* 143 F.R.D. 508, 511 (S.D.N.Y. 1992).

 It follows naturally from the purpose behind work product protection that material is not deserving of protection unless it was "prepared in anticipation of litigation

or for trial" by a party or its attorney. Fed. R.Civ.P. 26(b)(3). In interpreting the Rule, the courts thus have held generally that the doctrine "applies only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation." Accordingly, if a party or its attorney "prepares a document in the ordinary course of business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation." *Martin v. Valley Nat'l Bank,* 140 F.R.D. at 304. *See also Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1120 (7th Cir.1983) (document must have been " 'prepared ... *because* of the prospect of litigation' or ... 'some articulable claim, *likely* to lead to litigation,' had arisen" (citations omitted; emphases in original); *Bowne of New York City, Inc. v. Ambase Corp.,* 150 F.R.D. 465, 471–72, 490 (S.D.N.Y. 1993); *Hardy v. New York News Inc.,* 114 F.R.D. 633, 644 (S.D.N.Y.1987) (litigation must be "the primary motivating purpose behind the creation of the document"); *Willis v. Westin Hotel Co.,* No. 85 Civ. 2056 (CBM), slip op. at 2–4, 1987 WL 6155 (S.D.N.Y. Jan. 29, 1987) (document must have been prepared "exclusively in anticipation of litigation" and threat of litigation must have been "imminent" and "substantial").

■ This burden of showing that a document is entitled to work product protection is on the party asserting it, and unless that party presents competent proof of circumstances showing the privilege should attach, protection must be denied. *Golden Trade, S.r.L. v. Lee Apparel Co.,* Nos. 90 Civ. 6291, 90 Civ. 6292, 92 Civ. 1167 (JMC), 1992 U.S.Dist. Lexis 17739 at *10–11, 1992 WL 367070 at *5 (S.D.N.Y. Nov. 20, 1992); *Pine Top Ins. Co. v. Alexander & Alexander Services, Inc.,* No. 85 Civ. 9860 (PNL), 1991 U.S. Dist. Lexis 14610 at *4–5, 1991 WL 221061 at *2 (S.D.N.Y. Oct. 7, 1991); *P. & B. Marina, Ltd. v. Logrande,* 136 F.R.D. 50, 57 (E.D.N.Y.1991), *aff'd,* 983 F.2d 1047 (2d Cir. 1992); *Compagnie Francaise d'Assurance v. Phillips Petroleum Co.,* 105 F.R.D. 16, 41 (S.D.N.Y.1984).

■ This burden cannot be " 'discharged by mere conclusory or ipse dixit assertions.' "

*In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 225 (2d Cir.1984) (quoting *In re Bonanno,* 344 F.2d 830, 833 (2d Cir. 1965)). At the initial conference last October when the subject of the notes was first raised, defendant's counsel contended that the document consisted of Stein's mental processes and conclusions made in anticipation of litigation and was, therefore, entitled to "absolute" protection from disclosure. Plaintiff's counsel argued merely that he needed the document to learn what occurred at the meeting and did not at that time dispute defendant's counsel's representation that the notes were made in anticipation of litigation. Under those circumstances and because depositions of those at the meeting had not yet taken place, I refused plaintiff's application for production of the notes. *See, e.g., Estevez v. Matos,* 125 F.R.D. 28, 30 (S.D.N.Y.1989). After depositions, however, the notes took on a different character. It was not necessary to resolve the work product issue at that point because plaintiff presented the Rule 612 issue. Agreeing with plaintiff, I ordered production of the notes because of Wholl's and Stein's review of them in preparation for their deposition testimony. Upon appeal to Judge Preska as discussed above, defendant again pressed the work product issue (and informed Judge Preska incorrectly that I had previously determined the notes to be entitled to be "absolute" protection). Absent from the record, however, was still any evidence from defendant to establish the privilege, such as an affidavit from Stein as to the circumstances of his preparation of the document; the *only* statements had been the "mere conclusory," "ipse dixit assertions," *In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d at 225, of defendant's counsel on this case (who had no involvement at the time of the July 1991 meeting). When Judge Preska remanded the matter to me, she was thus apparently unaware that I had not determined the work product issue but had held simply that, even if work product, production was required under Rule 612. In light of defendant's counsel's representations and Judge Preska's remand to me, that issue should now be determined.

Given the absence of *any* competent evidence from defendant tending to support the privilege, it would have been a simple matter to hold that because defendant had failed to sustain its burden, work product protection could not apply. Indeed, a reading of the deposition sections that had been submitted to Judge Preska tended to show that the July 16, 1991 meeting had been called in the normal course of defendant's business to explore the allegations Patricia Healy had made against plaintiff without any litigation in mind. Defendant, however, seemed unaware of the need to present any evidence to support its work product contention, so, to give defendant the benefit of any doubts, I requested that the notes be submitted for *in camera* inspection.

A reading of the notes revealed several things. First, contrary to defendant's counsel's representations, the notes are hardly Stein's "mental impressions and thoughts." They are, in essence, a running transcript of the meeting in abbreviated form. They consist *entirely* of the initials of the persons at the meeting followed by what that person said.[1] (They are not, of course, like a transcript a stenographer would prepare, but rather contain the statements of the particular speaker summarized in a few words.) There are no "mental impressions, conclusions, opinions, or legal theories," Fed. R.Civ.P. 26(b)(3), of Mr. Stein set forth, and, thus, would not be entitled to the heightened level of work product protection. In finally submitting the notes to me for *in camera* inspection, defendant's counsel's cover letter elliptically states that the notes were "selectively prepared" by Stein and that, according to plaintiff, the meeting at which they were taken lasted between two and three hours.[2] It would thus appear that counsel is now attempting to contend that because Stein necessarily chose what statements to note during the meeting and did not write down every statement made, the notes represent his mental processes and must be protected. Defendant's contentions are without merit. In *In re John Doe Corp.*, 675 F.2d 482 (2d

Cir.1982), the Second Circuit addressed the question of whether notes made by an in-house attorney in interviewing employees were protected by the work product doctrine. The court recognized that the documents could "indicate the factual areas believed to be of importance by Doe Corp.'s legal department or contain other matters directly or indirectly reflecting their legal theories," but nevertheless ordered their production:

> [W]e have examined *in camera* the notes of the Employee A interview and agree totally with Judge Sifton that their production will not trench upon any substantial interest protected by the work-product immunity. The notes recite in a paraphrased, abbreviated form, statements by Employee A relating to events [at issue]. *To the extent that the statements imply the attorney's questions from which inferences might be drawn as to his thinking,* those inferences merely disclose the concerns a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything worthy of the description "legal theory." We hold, therefore, that the notes of the Employee A interview must be produced.

675 F.2d at 493 (citation omitted; emphasis added). In the instant case, where the notes show Stein was not even conducting an interview but acting merely as a passive recorder of events, the conclusion is even more obvious. Another instructive case is *Grossman v. Schwarz*, 125 F.R.D. 376, 389 (S.D.N.Y. 1989), in which Judge Wood held that a defendant's lawyer's notes, described as "recording or referring to 'contacts' with the plaintiff or plaintiff's threats to sue," were not work product and were to be produced if they recorded contemporaneous conversations with the plaintiff rather than litigation strategy.

Despite the foregoing, in an expansive view of the court's obligation in this regard, I requested Stein to appear to testify about the circumstances of his taking of the notes to give defendant even further opportunity to

---

1. Because it is possible defendant will appeal the instant ruling, I am taking care not to reveal any of the contents of the document.

2. Wholl testified, however, that it was "probably no more than an hour." (Wholl deposition at 49.)

present evidence to establish the existence of the privilege claimed. Stein testified before me briefly, and his testimony confirmed that the work product privilege should not apply to his notes. In response to my questioning, Stein stated, first, that the purpose of the July 16, 1991 meeting "was to review with Miss Redvanly some issues that had arisen between ... herself and Pat Healy." (Tr. at 2.) This was the first time the Healy matter was presented to plaintiff, and "the focus of the meeting turned to the specifics of the issues that Miss Healy had brought up." (*Id.* at 3.) While a meeting is not "routinely" held when an employee makes allegations against a superior, it is if the issues are "sufficiently serious." (*Id.* at 2–3.) When I asked Stein why he took notes at the meeting, he promptly spouted the words of Rule 26(b)(3): "... I took the notes to record for myself my impressions, my conclusion—my, my idea of what was going on in this meeting because there was a concern on my part that however the meeting went, there was a possibility of ensuing litigation...." (*Id.* at 4.) The testimony continued as follows to my questioning:

Q. Did you know of any threats of litigation or any claims she threatened to bring?

A. No. Incidentally ... my concerns were not only that Miss Redvanly might commence litigation, but others could commence litigation against the company as a result of the things that were alleged to have taken place.

Q. What others?

A. It was my belief that Miss Healy was very troubled about the events that had taken place in her job and that she had, in my opinion, some serious concerns about the way she had been treated by Miss Redvanly. And I was concerned, as an attorney working for the company, Nynex Mobile, that one piece of litigation that could possibly ensue would be an ac-

tion brought by Miss Healy for harassment or some other failure on the part of the company to provide a suitable work environment.

(*Id.* at 4–5.)

To put it bluntly, I believe Stein testified dishonestly. I do not make such a statement easily, but the testimony, given in obvious discomfort and stumbling words, no doubt reflected Stein's discussion with defendant's counsel that morning concerning "the questions I would likely be asked and ... what would my answers likely be." (*Id.* at 7.) The notes, themselves, simply do not show any "impression," "conclusion" or any particular "idea of what was going on" in the meeting. They simply record who said what. Moreover, even were I to assume Stein stated the truth, his professed concern that litigation could be brought by plaintiff or by Healy is not sufficient to render the notes privileged because, as indicated by the discussion earlier, the "anticipation of litigation" requirement is not met simply because a document is prepared in the course of business that a party knows may be useful in the event litigation should ensue. There was no "articulable claim, *likely* to lead to litigation," *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir.1983) (quotation omitted; emphasis in original), or a threat of litigation that was "imminent" and "substantial," *Willis v. Westin Hotel Co.*, No. 85 Civ. 2056 (CBM), slip op. at 4, 1987 WL 6155 (S.D.N.Y. Jan. 29, 1987).[3]

██ Thus, based on all the evidence, including the notes themselves, I believe they were taken merely as notes of a meeting are often taken by those who attend meetings— to have some record of what occurred. They were not taken "in anticipation of litigation." However, let us go a step further. Even if the notes were to be deemed work product, plaintiff would be entitled to them because

---

3. That this was a business meeting and the lawyers were acting in their businessman role rather than their legal advisory one is further supported by the pre-trial order just submitted in this case. Defendant there asserts as facts it intends to prove at trial that Wholl, Coticchio and Fleder, described as "executives" and "senior managers," had told the president of the company that

they were going to hold this meeting "to provide plaintiff with an opportunity to offer an explanation to the serious events and allegations" and "if plaintiff were unable to offer satisfactory explanations for her conduct, she would be discharged." They then held the meeting after the president "agreed with their presentation and strategy." (Joint Pre–Trial Order, pp. 33–34.)

she has "substantial need" for them and is unable to obtain their equivalent by other means.

The decision in *Xerox Corp. v. International Business Machines Corp.,* 64 F.R.D. 367 (S.D.N.Y.1974), is instructive here. That case involved allegations by Xerox that IBM personnel had misappropriated Xerox trade secrets during the course of developing a new commercial copier. An in-house attorney for IBM, undisputedly in anticipation of the litigation which Xerox was expected to bring, conducted an investigation of the use of alleged Xerox trade secrets at IBM, involving interviews of 37 IBM employees. After suit was brought, Xerox deposed 23 of the 37 employees who generally testified that they were unable to recall the extent of their access to and use of Xerox documents. Xerox moved for production of the in-house attorney's notes of his interviews with the 37 employees. This court, after rejecting IBM's contention that work product containing an attorney's mental impressions, conclusions and strategies are "absolutely" privileged against disclosure, held the attorney's notes of his interviews with the 23 deposed persons were to be produced because, insofar as these persons testified at the time of deposition they had little recollection of events at issue, Xerox had established substantial need for the notes:

> It is therefore apparent that the basic thrust of *Hickman* and its progeny is that documents containing the work product of attorneys which contain the attorneys' thoughts, impressions, views, strategy, conclusions, and other similar information produced by the attorney in anticipation of litigation are to be protected when feasible, but not at the expense of hiding the non-privileged facts from adversaries or the court. Both sides of a suit need to know the facts in order to properly present their case to a court; and the court needs to know the facts in order to make a sound and intelligent decision. Thus, the right of privacy of an attorney's notes must be balanced against the critical need for the facts. Where the non-privileged facts are

intertwined with information which conceivably is privileged, the critical factor becomes the availability of the non-privileged facts from other sources; and where no other sources exist, then a balance must be struck in favor of distilling, if possible, the non-privileged facts from the attorney's documents. If such a distillation becomes impossible, however, then the entire contents of the documents must be produced.

64 F.R.D. at 381.[4] As to the notes of interviews with the 14 persons Xerox had not yet deposed, the court held substantial need had not been shown and the notes, therefore, not discoverable. However, subsequent history of the case shows that after Xerox deposed 10 more of the employees, the court ordered production of all the notes (including those claimed by IBM to relate to and reflect legal assistance, opinions and advice), saying "[t]here is no reason to believe that the recollections of those persons not yet deposed would be any better than those already deposed by Xerox." *Xerox Corp. v. International Business Machines Corp.,* 79 F.R.D. 7, 9 (S.D.N.Y.1977). Similarly, in *Estevez v. Matos,* 125 F.R.D. 28 (S.D.N.Y.1989), apparently conflicting statements that had been obtained by the attorney for the defendants from a witness on a critical issue to the litigation were ordered produced after the witness professed lack of knowledge or recollection at her deposition. Although clearly work product in connection with the ongoing litigation, the court held that there was need for the statements since "[a] trial under the Federal Rules of Civil Procedure is not a game of surprises, but an effort to establish the truth on the basis of all the evidence." 125 F.R.D. at 32. The court reasoned that the credibility of plaintiff and the witness would be central issues at trial and that, with respect to the witness, "[w]hether or not her recollection is refreshed at trial by means of her earlier statements, it is apparent that her present lack of recollection makes it impossible for plaintiffs' attorney 'to obtain the substantial equivalent' of her contemporaneous

---

**4.** The court had IBM submit the notes so that the court could determine whether any portions contained solely the attorney's mental impressions, conclusions, opinions and legal theories and, if so, whether deletion of such portions would be appropriate and feasible prior to production.

version of material facts by other means." *Id.*

In *Eckert v. Fitzgerald*, 119 F.R.D. 297 (D.D.C.1988), an attorney made notes to his file concerning settlement negotiations. In ordering production of the notes in subsequent litigation over the terms of the settlement, the court held:

> ... [T]he Defendant has shown adequate reasons why the work product should be subject to discovery. The relevant portions of the notes are the facts and mixed fact and opinions that the notes contain concerning the terms of the agreement. Burke's opinions and mental conclusions are not probative of the actual terms entered into by the parties. To the extent that work product contains relevant, non-privileged facts the standard for overcoming the privilege is to show substantial need and undue hardship in obtaining the substantial equivalent of the work product materials. The Defendant has met this standard. Burke's notes represent the only written memorialization of the substance of the July 10 purported settlement from the Plaintiff's standpoint. Therefore, the Defendant has a demonstrated need for the documents and has no alternative source of the substantially equivalent work product materials.

119 F.R.D. at 299–300 (citations omitted). *See also Phillips v. Dallas Carriers Corp.*, 133 F.R.D. 475, 480–81 (M.D.N.C.1990) ("The Court has reviewed the entirety of the deposition of Raymond Smith and finds that, in important respects, the passage of time since the accident has apparently resulted in the defendants' inability to recall significant aspects of the collision. Plaintiffs cannot obtain the substantial equivalent of the Smith statement, the statement being a nearly contemporaneous account of the events put in issue in this litigation."); *Aguinaga v. John Morrell & Co.*, 112 F.R.D. 671, 681 (D.Kan. 1986) ("... these documents, many of which represent contemporaneous writings, are the most direct and effective means of demonstrating the union's knowledge and intent regarding its activities.")

Many other cases exist compelling disclosure in work product situations where the need is far less apparent than here, but it hardly seems necessary to relate them. In the instant case, at trial, the credibility of plaintiff and of all defendant's employees who attended the meeting will be in issue as well as the motivation of the latter in terminating her employment at the conclusion of the meeting. It apparently will be plaintiff's word against the word of the four others as to what occurred at the meeting. Given the wide divergence of accounts by defendant's witnesses as to what occurred at the meeting when plaintiff was confronted with Healy's allegations, given the professed partial lack of recollection by Wholl and Stein despite review of Stein's notes just before their depositions, given Fleder's testimony that plaintiff was terminated because she admitted the allegations and defendant's intent to prove at trial that had she explained them satisfactorily she would not have been terminated (*see* footnote 3, *supra*), and given the fact that Stein's notes are the only contemporaneous written account of what occurred on this material issue, even if they were to be deemed work product, plaintiff has satisfied her burden of showing substantial need for the notes and her inability to obtain their equivalent. *See also, e.g., Macario v. Pratt & Whitney Canada, Inc.*, Civ.A. No. 90–3906, 1991 U.S. Dist. Lexis 106, 1991 WL 1004 (E.D.Pa. Jan. 2, 1991), and *In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 568 (E.D.Pa.1989) (decided under the "at issue" exception to work product protection), both holding that "contemporaneous records have 'an inherent reliability which cannot now be duplicated by any other source of evidence'" (quoting *In re Hawaii Corp.*, 88 F.R.D. 518, 525 (D.Haw. 1980)), even though the individuals involved in the events in those cases were available for depositions and other methods of discovery had not been attempted.

 Finally, let us turn to Federal Rule of Evidence 612 which provides a wholly independent basis for the necessity of disclosure of Stein's notes (even if they were work product). The Rule provides in relevant part that if, before testifying, "a witness uses a writing to refresh memory for the purpose of testifying ..., if the court in its discretion determines it is necessary in the

interests of justice, an adverse party is entitled to have the writing produced ... to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."[5] The "potential for conflict [that] exists between Rule 612, which favors disclosure of materials used to refresh a witness' recollection, and the work-product privilege" is resolved by the courts on a case-by-case basis by balancing "the competing interests in the need for full disclosure and the need to protect the integrity of the adversary system protected by the work-product rule." *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 119 F.R.D. 4, 5 (E.D.N.Y. & S.D.N.Y. 1988). As explained by Judge Sifton, "[t]he rules may be reconciled because the 'interests of justice' standard of Rule 612 incorporates as part of the balancing analysis the protection afforded by the work-product doctrine, while the 'substantial need' requirement of Rule 26 can take into account the need for disclosure under Rule 612." *Id.* (citations omitted).

■ Defendant here cites three cases in its memorandum of law submitted to Judge Preska which it claims support its position that the notes do not warrant disclosure under Rule 612. To the contrary, however, those cases compel the conclusion that disclosure must be made in this instance. *In re Joint Eastern and Southern Dist. Asbestos Litig.* involved a "product book" prepared by plaintiff's attorney and reviewed by plaintiff in preparation for his deposition to assist him in identifying the asbestos product to which he was exposed. There was no dispute that the book constituted work product. The court ordered disclosure under Rule 612:

> The documents used by plaintiff to prepare for deposition on that issue are necessary to defendants in order to test the credibility and memory of the witness and to de-

termine what effect the document review had upon the witness' testimony.... Without reviewing the product book, defendants' counsel cannot know or inquire into the extent to which the witness' testimony was affected by counsel's presentation.

119 F.R.D. at 6.[6] In *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613 (S.D.N.Y. 1977), the dispute involved four notebooks shown to defendant's experts. They had been prepared by defendant's counsel in the course of readying the case for trial and were found by Judge Frankel to be the "essential" form of attorney work product, *i.e.*, "residue and reflection of 'interviews, statements, memoranda, correspondence ... mental impressions, personal beliefs,' and other products of the advocate's professional interaction with the materials of his art." 74 F.R.D. at 616 (quoting *Hickman v. Taylor*, 329 U.S. at 511, 67 S.Ct. at 393). Judge Frankel, in discussing the issue, noted:

> ... it is disquieting to posit that a party's lawyer may "aid" a witness with items of work product and then prevent totally the access that might reveal and counteract the effects of such assistance ... with the anticipation that these efforts should remain forever unknowable and undiscoverable.

*Id.* In deciding not to grant plaintiff's motion for production, the court reasoned that the material that had been made available for cross-examination of the experts appeared to cover all the points on which they had been instructed or advised by counsel for their testimony. However, Judge Frankel made it quite clear that, "[n]o less importantly," his decision rested on the fact that prior to that case, the state of the law on the issue was such that counsel was not aware that showing such work product to a witness could

---

5. The rule is applicable to depositions pursuant to Fed.R.Civ.P. 30(c). *Poseidon Capital Corp. v. Nicolet Instrument Corp.*, Nos. 85 Civ. 6118, 85 Civ. 6151 (CSH), 1985 WL 3818 at *4 (S.D.N.Y. Nov. 20, 1985) (available on Lexis without citation); *Al–Rowaishan Estab. Universal Trading & Agencies, Ltd. v. Beatrice Foods, Inc.*, 92 F.R.D. 779, 780 n. 1 (S.D.N.Y.1982); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D.Del.1982).

6. Demonstrating the dovetailing between Rule 612 and the "substantial need" showing under the work product rule, the court also found that even without Rule 612, disclosure was required under Rule 26(b)(3) because defendants had substantial need since they could not learn by other means the extent to which the product book may have affected the plaintiff's deposition testimony. 119 F.R.D. at 6.

result in its disclosure. He stated that his decision was made "without any sure conviction that this is an eluctably right course" and concluded as follows:

> In this spirit, this court notes now, with hindsight, that there is not a compelling rationale for the view that counsel may (1) deliver work product to an expert or other witness to be "useful to the client," but then (2) withhold the material from an adversary who seeks to exploit the fact of this assistance in cross-examining the witness. From now on, as the problem and the pertinent legal materials become more familiar, there should be a sharp discounting of the concerns on which defendant is prevailing today. *To put the point succinctly, there will be hereafter powerful reason to hold that materials considered work product should be withheld from prospective witnesses if they are to be withheld from opposing parties.*

*Id.* at 617 (emphasis added).

It is fair to say that in the 16 years since Judge Frankel rendered that decision his warning has been heeded and the courts have not shown the reluctance which compelled him at that time not to require disclosure of the attorney's work. Indeed, five years later in *James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 145 (D.Del.1982), another district court stated that "[t]hose courts which have considered the issue have generally agreed that the use of protected documents to refresh a witness' memory prior to testifying constitutes a waiver of the protection." The *James Julian* court, after pointing out that Judge Frankel's decision against disclosure in *Berkey Photo* "was based not on [his] reading of Rule 612 but on [his] perception that an order compelling discovery would work undue hardship on defendant whose counsel were unaware of the scope of the then recently adopted rule" and that Judge Frankel "was at pains to put the bar on notice that in the future a contrary result would obtain," noted that "Judge Frankel's prediction has proved largely accurate" and reviewed subsequent cases. 93 F.R.D. at 145.

The only other decision cited here by defendant, *Al–Rowaishan Estab. Universal Trading & Agencies, Ltd. v. Beatrice Foods, Co.,* 92 F.R.D. 779 (S.D.N.Y.1982), was one in which Judge Lasker denied disclosure of a plaintiff's attorney's digest of a deposition and his marginal notes thereon which had been reviewed by the plaintiff prior to his deposition. After reviewing the material *in camera,* Judge Lasker concluded disclosure was not required because the material was not "factual" work product but purely the attorney's mental impressions concerning the ongoing litigation and that it was "difficult to see how [defendant] would be 'hampered in testing the accuracy' of [plaintiff]'s by the failure to order disclosure of the documents." 92 F.R.D. at 780–81. The reliance of defendant here on that case is misplaced. Stein's notes are a factual account of the business meeting, the events at which are now in dispute in this subsequent litigation. Having reviewed the notes *in camera,* I find plaintiff here would indeed be hampered in testing the accuracy of Stein's and Wholl's testimony without production of this document of which they had the benefit shortly before testifying. A decision not cited by defendant that is particularly relevant here is *Eckert v. Fitzgerald,* 119 F.R.D. 297 (D.D.C.1988). During a prior action brought by the same plaintiff against the same defendant, both parties had represented to the court that they had reached an oral settlement, and the court dismissed the case. When the parties shortly thereafter came to blows over what the terms of the agreement had been, plaintiff commenced a second suit. The Rule 612 issue arose with respect to notes made by plaintiff's former trial counsel to his own file during the negotiations leading to the settlement agreement in the first case and the events in court when the court was informed of the settlement. To refresh his memory, the lawyer reviewed those notes prior to his deposition in the second suit and referred to them at one point during the deposition. Rejecting plaintiff's arguments that, because defendant's counsel himself was at the negotiations there was no reason for him to need plaintiff's counsel's notes of same, the court explained:

> The Court's interest in the truth weighs heavily against the benefits encompassed in the privilege when a lawyer relinquishes

his advocacy role and assumes the status of an independent witness for a former client. As a witness he is bound to state the facts known to him honestly, fairly and objectively. If prior to testifying about the facts and matters of mixed fact and opinion he relies on prior notes to refresh his recollection, he is no different from any other witness, and his notes are discoverable pursuant to Fed.R.Evid. 612. . . .

The purpose of allowing disclosure in such instances is to preclude the attorney from selectively choosing which documents he utilizes to refresh his recollection, thereby placing the cross-examiner at a disadvantage. . . .

Although Burke's notes represent what he learned at the settlement conference through his own ingenuity, the work product privilege is not served by allowing him to change his role from that of attorney to that of a witness for his former client, and then base his testimony on notes shielded by the privilege. . . . As a lay witness Burke's role is to assist the fact-finder in determining where the truth lies concerning this issue. This role cannot be jeopardized by placing the Defendant at a disadvantage in cross-examining the witness by denying the Defendant the opportunity to review notes that the witness has relied upon to substantiate his version of the disputed settlement terms. Therefore, Rule 612 is appropriately imposed in this matter to waive application of the work product privilege to the facts and mixed facts and opinions concerning the disputed settlement terms incorporated in Burke's notes.

119 F.R.D. at 299.

Similarly, Stein is no different from any other factual witness. Contrary to defendant's depiction of the situation, Stein and Wholl were not "simply . . . attorneys within the same corporate legal department . . . working on the same matter" and reviewing a privileged document. (*See* page 463, *supra.*) Rather, they were factual witnesses to critical events at issue who reviewed the

document to prepare for their own testimony.[7] Without belaboring the point further, it is quite clear on the basis of the authorities and for the reasons already discussed that disclosure is mandated in the interests of justice under Rule 612.

In sum, the notes are not work product; they are not "mental impressions"; they were not made "in anticipation of litigation." Even if, however, the foregoing were not correct and the notes were to be deemed work product, plaintiff certainly has met the "substantial need" doctrine and would be entitled to them nevertheless. Finally, regardless of all that, plaintiff is entitled to them under the separate basis of Rule 612.

It is hereby ORDERED that the original notes be produced to plaintiff within 24 hours of receipt of this opinion.

---

**7.** Moreover, unlike the situation in *Eckert*, the notes are not even mixed facts and opinions, but purely facts.